**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2138-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SERGIO A. FAUSTINO,

    Defendant-Appellant.

_____

        Argued April 29, 2026 – Decided June 16, 2026

        Before Judges Smith and Berdote Byrne.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 96-09-1507 and 00-03-0444.

        Ronald P. Mondello argued the cause for appellant.

        Alexandra E. Harrigan, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Alexandra E. Harrigan, of counsel and on the brief).

PER CURIAM

Defendant Sergio A. Faustino appeals from the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant, who is not a United States citizen, pleaded guilty in two criminal cases in 1997 and 2000 to third-degree aggravated assault with a deadly weapon and third-degree possession of a controlled dangerous substance, respectively. He was eventually deported in 2010 after he was arrested on unrelated outstanding warrants. He filed a petition for post-conviction review (PCR) in October 2024, alleging he received ineffective assistance of counsel because he was incorrectly advised his guilty pleas would not result in him being deported. He also sought to withdraw both guilty pleas. We affirm substantially for the reasons expressed in the well-reasoned, eighteen-page, written opinion of the Honorable Michael A. Guadagno. We agree with Judge Guadagno that defendant's petition was untimely pursuant to Rule 3:22-12(a)(1), and he has failed to establish excusable neglect. Additionally, we conclude the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty pleas pursuant to Rule 3:21-1.

I.

Defendant was born in Angola on September 4, 1974, and is a citizen of Portugal. In July 1995, he legally entered the United States while working as a

A-2138-24

crewmember on a vessel docked in Miami. Defendant was permitted to remain in the United States until his ship left port, but in no event longer than twenty-nine days. Defendant remained in the United States beyond that period without authorization.

Defendant was arrested in June 1996 after a violent confrontation with the boyfriend of a woman defendant was dating. According to defendant, the other man came to his apartment after learning of the relationship and "began banging on the door." A fight ensued, and defendant eventually hit the man with a glass from his bedside table. On appeal, defendant now maintains he was "instinctively defending [himself]."

A grand jury indicted defendant for second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count two); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count three). Thereafter, defendant appeared with his attorney and pleaded guilty to count two of the indictment. Counts one and three were dismissed. Defendant was sentenced, consistent with a plea agreement, to probation.

Defendant was arrested again in November 1999 after a traffic stop, which led to the discovery of cocaine in defendant's car. A Monmouth County grand

jury returned an indictment charging defendant with third-degree possession of a controlled dangerous substance. N.J.S.A. 2C:35-10(a)(1).

Defendant, represented by different counsel, pleaded guilty to the possession charge pursuant to a plea agreement and was sentenced to probation.

In both of defendant's criminal cases, he circled "yes" in response to the following question on the plea form:

> DO YOU UNDERSTAND THAT IF YOU ARE NOT A UNITED STATES CITIZEN OR NATIONAL, YOU MAY BE DEPORTED BY VIRTUE OF YOUR PLEA OF GUILTY?

On September 7, 2010, defendant was arrested by the Wall Township Police Department on outstanding warrants involving motor vehicle violations. On September 9, a Supervisory Deportation Officer signed an arrest warrant stating defendant was "within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act."

In September 2010, while incarcerated on the warrants, defendant was notified he would be detained by the Department of Homeland Security (DHS) until his case could be heard by an immigration judge. That same day, defendant was also served with a notice to appear, which indicated he legally entered the United States through Miami in July 1995 as "a nonimmigrant (C-1) alien in

4

transit with authorization to remain in the United States for a temporary period not to exceed August 23, 1995." The notice claimed defendant remained in the United States beyond that period without authorization, subjecting him to removal pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act (INA). On October 6, 2010, an additional notice was provided to defendant, stating he was also subject to removal pursuant to section 237(a)(2)(B)(i) of the INA because of his 2000 conviction for possession of a CDS, in violation of N.J.S.A. 2C:35-10(a)(1).

In October 2010, defendant retained an immigration attorney, who he claims advised him "to accept the deportation" because he would "be able to return in the not [too] distant future" based on his marriage to a United States citizen. On October 15, 2010, an immigration judge ordered defendant to be removed to Portugal. He was deported on November 4, 2010.

Fourteen years later, on October 16, 2024, defendant filed a PCR petition. He alleged ineffective assistance of counsel in both cases because his lawyers incorrectly advised him that pleading guilty to a term not involving incarceration would not lead to adverse deportation consequences. He also alleged he should be allowed to withdraw the pleas due to the incorrect immigration advice. Finally, defendant alleged his attorneys in both cases rendered ineffective

5

assistance of counsel for not explaining the pre-trial intervention program (PTI) and seeking his admission into PTI.

Judge Guadagno denied the petition without an evidentiary hearing, finding the petition time-barred but also concluding the petition failed on its merits. This appeal followed.

Before us defendant contends:

POINT I

THE PETITION IS NOT TIME BARRED
A. Defendant Has Established Excusable Neglect
B. The Petition was filed within one year of discovering the factual predicate for the relief sought
C. Enforcement of the Time Bar Would Result in a Fundamental Injustice

POINT II

FORMER COUNSEL WAS INEFFECTIVE FOR NOT EXPLAINING THE PRE-TRIAL INTERVENTION PROGRAM, FOR NOT ADVISING AS TO THE IMMIGRATION CONSEQUENCES OF PTI, FOR NOT FILING FOR PTI AND A SUBSEQUENT PTI APPEAL IF PTI WAS DENIED

POINT III

THE DEFENDANT WAS DENIED HIS UNITED STATES CONSTITUTIONAL RIGHT AND NEW JERSEY STATE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY STATE CONSTITUTION DUE TO COUNSELS' MISADVICE AS TO THE

6

CRYSTAL CLEAR IMMIGRATION CONSEQUENCES OF HIS CHARGES NAMELY THAT HE WOULD NOT BE DEPORTED A PRESUMPTION OF PREJUDICE EXISTS OR, AT THE VERY LEAST, A REASONABLE PROBABILITY EXISTS THAT BUT FOR THE ERRORS THE RESULT OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT; THE DEFENDANT'S CONVICTION SHOULD BE VACATED

POINT IV

PLEA COUNSELS' MISADVICE TO DEFENDANT CONCERNING THE IMMIGRATION CONSEQUENCES OF HIS GUILTY PLEA RENDERED DEFENDANT'S PLEA INVOLUNTARY AND UNKNOWING UNDER RULE 3:9–2 AND, THEREFORE, DEFENDANT SHOULD BE PERMITTED TO WITHDRAW HIS GUILTY PLEA

POINT V

PURSUANT TO STATE V. SLATER, 198 N.J. 145 (2009), DEFENDANT MEETS THE "MANIFEST INJUSTICE" FOUR FACTOR BALANCING TEST IN ORDER TO WITHDRAW GUILTY PLEA

II.

In State v. Hernandez-Peralta, our Supreme Court recently reaffirmed our role in reviewing PCR petitions: "Our review of a PCR court's factual findings is 'necessarily deferential.' However, we review a PCR court's legal conclusions de novo." 261 N.J. 231, 246 (2025) (citation omitted) (quoting State v. Nash, 212 N.J. 518, 540 (2013)).

That de novo review extends to whether an evidentiary hearing was necessary to rule on the merits of a PCR petition because, in the absence of PCR,

a defendant may argue an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance of counsel claim. See State v. Porter, 216 N.J. 343, 354-55 (2013). However, the PCR court should grant an evidentiary hearing only where: (1) a defendant is able to establish a prima facie case of ineffective assistance of counsel; (2) there are material issues of disputed fact that must be resolved with evidence outside of the record; and (3) the hearing is necessary to resolve the claims for relief. See R. 3:22-10(b); Porter, 216 N.J. at 354.

We preface our analysis by acknowledging the well-known legal principles governing PCR appeals. PCR is analogous to the federal writ of habeas corpus. State v. Pierre, 223 N.J. 560, 576 (2015). To be entitled to an evidentiary hearing, the petitioner must "allege specific facts and evidence supporting his allegations." Porter, 216 N.J. at 355.

Both the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. See Strickland v. Washington, 466 U.S. 668, 686-87 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). In addressing an ineffective assistance of counsel claim raised in a petition for PCR, New Jersey courts follow the two-part test articulated in Strickland, 466

8

U.S. at 687. See Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (citing Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts provide "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical decisions and viewing those decisions under the 'distorting effects of hindsight.'" State v. Marshall, 148 N.J. 89, 157 (1997) (quoting Strickland, 466 U.S. at 689).

The second Strickland prong requires the defendant to show counsel's errors created a "reasonable probability" that the outcome of the proceeding would have been different if counsel had not made the errors. Strickland, 466 U.S. at 694. This "is an exacting standard." Gideon, 244 N.J. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). Prejudice is not presumed but must

instead be affirmatively proven by the defendant. Ibid. Additionally, in the context of a guilty plea, a defendant must show "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

For ineffective assistance claims regarding advice about the immigration consequences of a guilty plea, the United Stated Supreme Court has held that "counsel must inform [their] client whether his plea carries a risk of deportation." Padilla v. Kentucky, 559 U.S. 356, 374 (2010). However, Padilla is not retroactively applicable to pleas entered before 2010. See State v. Gaitan, 209 N.J. 339, 372-73 (2012); Chaidez v. United States, 568 U.S. 342, 344 (2013). Pleas entered before Padilla are governed by State v. Nuñez–Valdéz, 200 N.J. 129 (2009), "which instead focuses on whether counsel provided affirmative misadvice regarding the immigration consequences of a guilty plea." State v. Santos, 210 N.J. 129, 143 (2012) (emphasis added).

Applying these principles to the facts before us, we agree with Judge Guadagno that the petition was time-barred. Defendant's two convictions were entered in 1997 and 2000, yet he did not file the petition until 2024. Pursuant to Rule 3:22-12(a)(1), "no petition shall be filed . . . more than [five] years after

10

the date of entry . . . of the judgment of conviction that is being challenged." For both convictions, defendant's filing greatly exceeded Rule 3:22-12(a)(1)'s five-year deadline. Thus, the petition may be considered only if "it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice." R. 3:22-12(a)(1)(A).

To demonstrate "excusable neglect," a defendant must provide more than "simply . . . a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009). "To determine whether a defendant has asserted a sufficient basis for relaxing the Rule's time restraints, we 'should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an "injustice" sufficient to relax the time limits.'" Ibid. (quoting State v. Afanador, 151 N.J. 41, 52 (1997)). "Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay." State v. Milne, 178 N.J. 486, 492 (2004) (quoting Afanador, 151 N.J. at 52).

Defendant argues he has established excusable neglect. Specifically, he claims the incorrect advice from his immigration attorney in 2010—who allegedly told him to accept deportation because he could eventually return to the United States—excuses the decades-long delay in filing his PCR petition. We are unpersuaded.

First, defendant does not adequately explain why he waited an additional fourteen years to file his petition after he was deported in 2010. Upon being deported, defendant was on notice the advice he received from his PCR counsel may have been incorrect with respect to the CDS plea. To excuse this further delay, defendant claims his immigration attorney told him in 2010 that he could return "to the United States with an immigrant visa based on his marriage to a United States citizen in the not-too-distant future." He also claims he consulted with a North Carolina immigration attorney in 2016, who stated nothing could be done to help with defendant's case. After actually being deported and consulted with counsel, defendant was now aware his prior convictions rendered him inadmissible and the immigration attorney's advice was incorrect. Instead, defendant waited until August 2024 to file a PCR petition.

Defendant also argues his late filing is excused by Rule 3:22-12(a)(2)(B), which allows a defendant to file a PCR petition one year after "the date on which

the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence."[1] Defendant alleges he discovered the factual predicate upon meeting with PCR counsel in August 2024, who advised him the only ability to return to the United States was to file a PCR petition. Thus, he contends his petition, filed in October 2024, was timely because it was filed within one year of his discovery of the factual predicate of the claim.

We conclude Rule 3:22-12(a)(2)(B) is inapplicable because the factual predicate of defendant's claim could have been discovered with "reasonable diligence" well before August 2024, when defendant alleges he first discovered the basis of his claim. Before his deportation in 2010, he could have learned of the immigration consequences of his pleas by consulting with an attorney, and after his deportation, defendant was on notice the advice related to his guilty pleas was incorrect. Thus, defendant cannot claim the basis of his claim could not have been discovered with "reasonable diligence" before August 2024.

---

[1] Although Rule 3:22-12(a)(2) refers to "second or subsequent" petitions, we have noted "the one-year supplemental period should apply as well to a first petition filed beyond the five-year limitation period of subsection (a)(1)." State v. Brewster, 429 N.J. Super. 387, 399 n.4. (App. Div. 2013).

Finally, we affirm the trial court's denial of defendant's motion to withdraw his guilty pleas pursuant to Rule 3:21-1 substantially for the reasons stated in Judge Guadagno's cogent, written opinion. In exercising its discretion to decide a motion to withdraw a guilty plea, a court must "consider and balance four factors": "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." State v. Slater, 198 N.J. 145, 157-58 (2009). "No one factor is dispositive, nor must a movant satisfy all four." State v. O'Donnell, 435 N.J. Super. 351, 369 (App. Div. 2014).

While a motion to withdraw a plea should be made before sentencing, pursuant to Rule 3:21-1, courts "may permit it to be made thereafter to correct a manifest injustice." Courts considering motions filed after sentencing apply "a more stringent standard" and "weigh[] more heavily the State's interest in finality." State v. McQuaid, 147 N.J. 464, 487 (1997). Accordingly, "the longer a defendant delays in seeking to withdraw a plea, the greater burden he or she will bear in establishing 'manifest injustice,' because the prejudice to the State under prong four will generally increase." O'Donnell, 435 N.J. Super. at 370.

Additionally, "a defendant's reasons for delay may also weigh against relief under factor two." Ibid. A "fair and just reason[] for withdrawal" will be found where a "defendant was not informed and thus did not understand material terms and relevant consequences of the guilty plea, namely, the direct, penal consequences of the plea." Slater, 198 N.J. at 159. We note that a "trial court's denial of defendant's request to withdraw his guilty plea will be reversed on appeal only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." O'Donnell, 435 N.J. Super. at 372 (quoting State v. Simon, 161 N.J. 416, 444 (1999)).

We perceive no abuse of discretion in Judge Guadagno's balancing of the Slater factors. Factors three and four weigh heavily in the State's favor. Both pleas were entered pursuant to a plea agreement, and, given the length of time since the convictions were entered, there would be significant prejudice to the State in permitting the pleas to be withdrawn. There is clear prejudice because the files for each of defendant's convictions have since been destroyed. See Slater, 198 N.J. at 161 ("The critical inquiry . . . is whether the passage of time has hampered the State's ability to present important evidence.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15

A-2138-24